UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REPUBLIC BUSINESS CREDIT, LLC                 CIVIL ACTION

VERSUS                                         NO. 2:13-CV-05535

GREYSTONE & CO., INC. AND                  SECTION: "C" (4)
GREYSTONE FUNDING CORPORATION

## ORDER AND REASONS[1]

Before this Court is defendants Greystone & Co., Inc. and Greystone Funding

Corporation's motion to transfer venue under 28 U.S.C. §1404(a). Rec. Doc. 47. Plaintiff

opposes the motion. Rec. Doc. 52. Having considered the record, the memoranda of counsel and

the law, the Court has determined that the defendants' motion to transfer venue is GRANTED.

## I. BACKGROUND

This case stems from an asset purchase agreement between plaintiff Republic Business

Credit, LLC ("RBC") and Greystone Commercial Services, LLP ("GCS"), a subsidiary of

defendant Greystone Funding Corporation ("GFC") and an affiliate of defendant Greystone &

Co., Inc. ("Greystone"). Rec. Doc. 1 at ¶ VII. RBC entered into negotiations with GCS in May

2013 to purchase a portfolio of factoring accounts and related assets. *Id.* Both RBC and GCS are

part of the "factoring" industry, which consists of factoring companies that "purchase the

invoices or accounts receivable of other companies in exchange for an immediate advance on the

total amount." Rec. Doc. 43 at 1 (citing Black's Law Dictionary (9th ed. 2009), factoring).

On June 28, 2013, GCS, GFC, and RBC finalized their negotiations and executed an

Asset Purchase and Portfolio Assignment Agreement ("APPAA"). Rec. Doc. 1 at ¶ IX. Through

the APPAA, RBC obtained ownership of a "Lockbox Account" at closing. *Id.* at ¶ XI. This

---

[1] Cindy Allen, a second-year student at Emory University School of Law, assisted in the
preparation of this Order and Reasons.

account was maintained at Wells Fargo Bank, N.A. ("Wells Fargo") and was the reception point

for payments from debtors of customers acquired from GCS in the APPAA. *Id.* at ¶ X. RBC

began receiving such payments immediately after closing and execution of the APPAA, on June

28, 2013. *Id.* at ¶ XIII. Section 6.8 of the APPAA contains choice of law and forum selection

provisions: "This agreement shall be governed and construed in accordance with the laws of the

State of Texas without regard to any applicable principles of conflict of law. Any dispute arising

out of or relating to this Agreement shall be filed in Federal or State Court in Dallas County,

Texas." Rec. Doc. 3-5 at 24.

Plaintiff claims that, upon execution of the APPAA, GCS essentially became a defunct

legal entity and GFC and/or Greystone became the beneficial owners of GCS's alleged funds.

Rec. Doc. 1 at ¶ XV, XVIII. In July 2013, GCS, under the direction of GFC and/or Greystone,

advised RBC that it claimed certain funds in the Lockbox Account pursuant to an excluded asset

provision in the APPAA. *Id.* at ¶ XIV. RBC subsequently disputed this claim and advised GCS

and Greystone that RBC owned the funds in question. *Id.* at ¶ XX. Braulio Rodriguez, a

Greystone employee, directed Wells Fargo to close the Lockbox Account and to return all mail,

including payments, in the Lockbox Account. *Id.* at ¶ XX-XXI, XXIII. Rodriguez also informed

Wells Fargo that forwarding any mail directed to the Lockbox Account was unnecessary. *Id.* at ¶

XXI.

RBC filed this suit on August 22, 2013, claiming conversion, intentional interference

with contract, and tortious interference with business relationship. *Id.* at ¶ XXXIII-L. On

September 6, 2013, GCS filed a complaint in the Northern District of Texas, alleging breach of

contract based on RBC's failure to relinquish the disputed sum in the Lockbox Account. Rec.

Doc. 43 at 2.  Defendants Greystone and GFC have moved to transfer venue in the present case

to the Northern District of Texas under 28 U.S.C. § 1404(a) and pursuant to the forum selection provision of the APPAA. Rec. Doc. 47.

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The initial forum in which the suit is brought need not be "wrong" in order to pursue a § 1404(a) transfer, but the desired jurisdiction must also be a proper venue. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013).

§ 1404(a) derives from the doctrine of *forum non conveniens* and thus considering a motion to transfer venue involves the same balancing-of-interests standard as did *forum non conveniens*. *Id.* at 580. Generally, courts weigh "the convenience of the parties" and private interest factors as well as "various public-interest considerations." *Id.* at 581. The private interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive

*Id.* at n.6 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981)). The public interest factors include, "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper*, 454 U.S. 241).

When the parties have agreed to a valid forum selection provision, however, "the calculus changes" and courts must adjust their analysis *Id.* Namely, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). In the presence of a forum selection clause, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Also, a "court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," leaving only public interest considerations. *Id.* at 582. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules," which may "affect public-interest considerations." *Id.*

### III. LAW AND ANALYSIS

Defendant GFC has established that the forum selection clause in the APPAA should be binding on plaintiff RBC's tort claims against it because it was a party to the APPAA. "Before a court can consider enforcing a forum selection clause, it first must decide whether the clause applies to the type of claims asserted in the lawsuit." *Claimserviceprovider, Inc. v. St. Paul Travelers Companies Inc.*, No. 06-2475, 2006 WL 2989240 (E.D. La. Oct. 18, 2006) (internal quotation marks omitted). In determining if the clause applies, courts will not allow litigants to avoid forum selection clauses merely through "artful pleading." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir. 2008). That is, litigants cannot avoid contractual provisions by grounding their complaint in tort rather than in contract. *Id.* So courts do not have "any slavish adherence to a contract/tort distinction" and instead consider the

4

breadth of the forum selection clause's language and the substance of the claims. *Id.*; *see also, Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221-3 (5th Cir. 1998).

The language of the APPAA's forum selection provision, Section 6.8, is broad: "Any dispute arising out of or relating to this Agreement shall be filed in Federal or State Court in Dallas County, Texas." Rec. Doc. 3-5 at 24. The Fifth Circuit and the Supreme Court have held that similar provisions applied to tort claims. For example, in *Marinechance*, the court held that a clause providing that "any and all disputes or controversies arising out of or by virtue of this Contract" covered tort causes of action. *Marinechance*, 143 F.3d at 223. Also, in *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court held that "all disputes and matters whatsoever arising under, in connection with or incident to this Contract" was sufficiently broad to reach a negligence claim. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (*superseded on other grounds by* 46 U.S.C § 30509 *as stated in Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.,* CV 108-153, 2010 WL 317472 (S.D. Ga. Jan. 25, 2010)). The forum selection provision at issue here is similar in that it also follows a structure indicating that claims directly arising out of the contract or otherwise indirectly relating to, in connection with, or by virtue of the contract will be governed by the provision.

Moreover, the validity of RBC's claims cannot be determined without consulting the APPAA; but for the APPAA, RBC would have no occasion for claims against GCS, Greystone, or GFC. For example, the business relationships defendant allegedly interfered with were created through the APPPAA. Thus, the forum selection provision should apply to RBC's tort claims. This conclusion is in line with other Circuits' tests for whether or not a forum selection clause covers tort causes of action:

> The Third Circuit has indicated that where tort claims "ultimately depend on the existence of a contractual relationship" between the

5

> parties, such claims are covered by a contractually-based forum
> selection clause. In *ManettiFarrow, Inc. v. Gucci America, Inc.,*
> 858 F.2d 509, 514 (9th Cir.1988), the Ninth Circuit stated that
> "[w]hether a forum selection clause applies to tort claims depends
> on whether resolution of the claims relates to interpretation of the
> contract."

*Claimserviceprovider, Inc. v. St. Paul Travelers Companies Inc.*, No. 06-2475, 2006 WL

2989240 (E.D. La. Oct. 18, 2006) (internal citations omitted).

The forum selection clause in the APPAA is therefore "given controlling weight."

*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy, J., concurring). This is not

the end of the analysis, though; courts must also consider public-interest factors. Defendants

contend that, because of the choice-of-law provision, the Northern District of Texas would be the

forum that is at home with the law. Defendants further contend that the APPAA's choice-of-law

provision applies to RBC's tort claims. However, the choice-of-law provision is narrower than

the forum selection provision, and this Court has already held that "the claims raised in this

complaint are subject to normal choice-of-law analysis." Rec. Doc. 43 at 11. Thus, the

application of Louisiana law weighs in favor of not transferring the case.

This Court has also already held that "RBC has made out a *prima facie* case that

defendants expressly aimed their conduct at Louisiana."  Rec. Doc. 43 at 7. Defendants'

assertions to the contrary that "this is not a 'localized' controversy centered in Louisiana" are

mostly unpersuasive. Rec. Doc. 47-1 at 10. Though defendants are foreign entities, Rec. Doc. 3-3

at 8, "New Orleans, Louisiana is the location of Republic's one and only business office and the

location of the Wells Fargo branch where plaintiff's accounts and treasury were held and

managed." Rec. Doc. 43 at 8.  The public interest factors, then, are slightly in favor of Louisiana

as the appropriate forum for this case. Nonetheless, since forum selection clauses are "given

controlling weight in all but the most exceptional cases," the public interest factors do not

outweigh the forum selection clause's indication that this case should be transferred to the

Northern District of Texas. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy,

J., concurring).

Greystone has not asserted that it is in contractual privity with RBC; "no party argues that

the asset purchase agreement binds RBC to [Greystone]." Rec. Doc. 43 at 10. However,

Greystone is bound up with the actions of GFC and GCS, with whom RBC is in contractual

privity, so it is fair to transfer the claims against Greystone as well as GFC. Moreover, severing

the claims against Greystone from the claims against GFC would create considerable

inconvenience for the parties, as that would result in suits in two different states. Thus,

defendants' motion to transfer venue is GRANTED.


Accordingly,

IT IS ORDERED that the motion to transfer venue filed by the defendants is GRANTED.


New Orleans, Louisiana this 12th day of June, 2014.


**HELEN G BERRIGAN**
**UNITED STATES DISTRICT JUDGE**